UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARNELL ANTHONY
WOFFORD, JR.,

      Plaintiff,

v.

JASON LORD, *et al.,*

      Defendants.

_____/

Civil Action No.: 18-11692
Honorable David M. Lawson
Magistrate Judge Elizabeth A. Stafford

**REPORT AND RECOMMENDATION
TO GRANT IN PART AND DENY IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 27]**

## I. Introduction

Plaintiff Darnell Anthony Wofford, Jr., proceeding *pro se*, filed a

complaint under 42 U.S.C. § 1983 against Detroit Police Officer Jason Lord

and the city of Detroit, alleging that his constitutional rights were violated

when he was arrested for firearm and marijuana possession in October

2016.  [ECF No. 1].  He was confined until January 2017 because of that

arrest, but Wayne County Circuit Judge Bruce Morrow granted Wofford's

motion to suppress the evidence, and the charges against him were

dismissed.  [*Id.,* PageID.4, 23].

Wofford filed his complaint in May 2018, and the Honorable David M. Lawson referred all pretrial matters to the undersigned.  [ECF Nos. 1, 8]. Defendants moved for summary judgment under Federal Rule of Civil Procedure 56(a) on February 6, 2019, and the Court notified Wofford that his response was due by February 27, 2019.  [ECF Nos. 27, 28].  Wofford filed no response nor requested an extension of time to respond.  When a plaintiff fails to respond or to otherwise oppose a defendant's motion, the court may consider the plaintiff to have waived opposition to the motion. *Humphrey v. U.S. Attorney General's Office*, 279 F. App'x 328, 331 (6th Cir. 2008).  Still, a defendant "bears the burden of demonstrating the absence of a genuine issue as to a material fact," and "must always bear this initial burden regardless if an adverse party fails to respond."  *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991).

After a review of defendants' motion, the Court finds that they have not met their initial burden for the claims against Lord, but that summary judgment for the city should be granted.

## II.   Background

During an afternoon in October 2016, Lord and his partner, Steven Wingle, were dispatched to Hubbell and Florence because of an anonymous report of "shots fired" by someone wearing a red shirt.  [ECF

2

No. 1, PageID.10-11; ECF No. 27-1, PageID.155].  Lord and Wingle arrived

at the area of the report in "[a] matter of seconds" and saw Wofford walking

on Florence with Dawand Ricks, who was wearing a red hoody covered up

by a jacket.  [ECF No. 1, PageID.14-16, 18-19; ECF No. 27-1,

PageID.155].  Wofford was walking his dog, and they were walking in the

street near the curb because there was glass on the sidewalk.  [ECF No.

27-5, PageID.191-92].  Lord and Wingle pulled their car in front of Wofford

and Ricks and got out of the car.  [*Id.*, PageID.192].  The officers

approached the men with Lord holding an AR 15 firearm, but he said that

he pointed it to the ground as shown in photos captured from the

dashboard video.  [ECF No. 1, PageID.18; ECF No. 27-4].

In the suppression hearing before Judge Morrow, Lord said he and

Wingle asked Wofford and Ricks if they had heard any shooting and if they

had any weapons on them.  [ECF No. 1, PageID.16].  Wofford testified in a

deposition that Lord also asked them if they possessed any drugs.  [ECF

No. 27-5, PageID.192].  Lord testified that Wofford then "volunteered" that

he had a gun, so Lord handcuffed Wofford and patted him down.  [ECF No.

1, PageID.16-17].  But Wofford stated that he stayed silent at first and

confessed to having a gun only because Lord had already started patting

him down.  [ECF No. 27-5, PageID.192].  Lord told Wofford that he was not

arrested but was being detained for officer safety.  [*Id.*, PageID.192-93].

Lord found a gun and marijuana on Wofford during the pat-down.  [*Id.*,

PageID.193].

At the suppression hearing, the prosecutor argued that Wofford had

been free to leave and that the stop was lawful under *Terry v. Ohio*, 392

U.S. 1 (1968).  [ECF No. 1, PageID.20-21].  Defense counsel countered

that Wofford was not free to leave, that the anonymous tip bore no indicia

of reliability, and that the tipster said nothing about a red hoody.  [*Id.*,

PageID.22].  Judge Morrow suppressed the evidence, holding that Wofford

was not free to leave during the encounter.  [*Id.*, PageID.23].  Judge

Morrow did not directly address whether the stop complied with *Terry*.  [*Id.*,

PageID.23].

## III.  Analysis

### A.

"The Court shall grant summary judgment if the movant shows that

there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Rule 56(a).  The Court's function

at the summary judgment stage "is not to weigh the evidence and

determine the truth of the matter but to determine whether there is a

genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249

(1986).  As noted, a defendant "bears the burden of demonstrating the absence of a genuine issue as to a material fact."  *Carver,* 946 F.2d at 454. The Court must view the factual evidence in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Defendants argue that Lord is entitled to qualified immunity, that Wofford's claim of unreasonable search and seizure are unsupported by the evidence and law, and that he has failed to state a claim against the city.  Viewing the evidence in a light most favorable to Wofford, the Court agrees that the city should be dismissed, but finds that summary judgment of the claims against Lord should be denied.

**B.**

Qualified immunity applies when a reasonable juror, viewing the evidence in a light most favorable to the plaintiff, would find that the defendant did not violate a clearly established constitutional right.  *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 (6th Cir. 2005).  In the Sixth Circuit, a constitutional violation is established by binding precedent from the Supreme Court or this circuit, and a court should look beyond those precedents only in extraordinary cases.  *Walton v. City of Southfield*, 995 F.2d 1331, 1336 (6th Cir. 1993) superseded by statute on other grounds as

5

stated in *Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 407–08 (6th Cir. 2007).

The Supreme Court has repeatedly warned courts "not to define clearly established law at a high level of generality." *Kisela v. Hughes*, __ U.S.__, 138 S.Ct. 1148, 1152 (2018) (citation and internal quotation marks omitted). "The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). A case need not be directly on point to be clearly established, but existing precedent must place police officers on notice that the conduct at issue is unlawful. *Kisela,* 138 S.Ct. at 1152-53.

In defendants' motion, they emphasize the need to examine the particular conduct against the existing law, but they fail to cite existing law that addresses conduct like Wofford's allegations. Defendants assert generically that Lord had reason to believe that Wofford and Ricks were "armed and dangerous." [ECF No. 27, PageID.142-44]. They also cite precedent permitting officers with reasonable suspicion to search both the suspect and his traveling companion. [*Id.*]. But defendants do not examine whether, under the precedent, the circumstances here gave Lord a

6

reasonable suspicion that Ricks or Wofford were armed and dangerous.

[*See* ECF No. 27, PageID.142-44].  The Court finds that clearly established

precedent defeats defendants' argument that summary judgment should be

granted for Lord. [1]

## C.

Officers may conduct investigatory stops if they have a "particularized

and objective basis for suspecting the particular person stopped of criminal

activity and were aware of specific and articulable facts which gave rise to

reasonable suspicion." *United States v. Keith*, 559 F.3d 499, 503 (6th Cir.

2009) (citations and internal quotation marks omitted). "The determination

of whether reasonable suspicion existed must be based on the totality of

circumstances in place at the time of seizure."  *United States v. Johnson*,

620 F.3d 685, 692 (6th Cir. 2010).  During a *Terry* stop, "an officer may

conduct a limited frisk or pat-down of that person for weapons if the officer

has a reasonable belief that the suspect is armed and dangerous."  *United*

*States v. Johnson*, 246 F. App'x 982, 986 (6th Cir. 2007).  Officers who

have no reasonable suspicion that a person is armed and dangerous may

---

[1]Although the prosecutor argued during the suppression hearing that
Wofford was not "seized" during the pat-down, defendants do not make that
claim here.  The Court therefore does not address that question.  And
although defendants argue that Lord did not interrogate Wofford in violation
of *Miranda*, the Court infers no *Miranda* claim from Wofford's complaint.

not conduct a pat-down.  "[T]he Fourth Amendment does not tolerate, nor has the Supreme Court or this Court ever condoned, pat-down searches without some specific and articulable facts to warrant a reasonable officer in the belief that the person detained was armed and dangerous…. This has long been the law." *Bennett v. City of Eastpointe*, 410 F.3d 810, 841 (6th Cir. 2005).

For defendants' motion, the Court must view the evidence in a light most favorable to Wofford.  *Scott*, 550 U.S. at 380.  According to Wofford, Lord began patting him down for a gun and drugs *before* Wofford confessed to having the gun.  [ECF No. 27-5, PageID.192].  The Court must therefore consider the specific and articulable facts known to Lord before Wofford's confession.  Those facts were that (1) there was an anonymous report of shots fired by someone wearing a red shirt around Hubbell and Florence, (2) seconds after this report was conveyed to Lord and Wingle, they saw Ricks and Wofford walking on Florence, and (3) Ricks was wearing a red hoody covered up by a jacket.  [ECF No. 1, PageID.10-11, 14-16; ECF No. 27-1, PageID.155].  Under existing precedent, these facts did not create a reasonable suspicion that either Ricks or Wofford were armed and dangerous.

8

First, under Supreme Court precedent, the anonymous tip did not include enough indicia of reliability to create reasonable suspicion that either Ricks or Wofford were armed and dangerous.  In *Fla. v. J.L*, "an anonymous caller reported to the Miami–Dade Police that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun."  529 U.S. 266, 268 (2000).  The police arrived at the bus stop within minutes and saw J.L. wearing a plaid shirt, but they saw no firearm and J.L. made no threatening movements.  *Id.*  The officers still frisked J.L. and two other people "against whom no allegations had been made."  *Id.*  After considering this background, the *J.L.* Court emphasized that anonymous tips alone are not enough; they must be "suitably corroborated" to provide reasonable suspicion for an investigatory stop.  *Id.* at 270.  And while an "accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense," the law requires that "a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person."  *Id.* at 272.

The particular facts of this case mirror those in *J.L.,* but there are minor distinctions.  The tipster here said that that a person in a red shirt was shooting a gun, and shooting a gun is more dangerous than simply possessing one.  And it is true that the *J.L.* Court distinguished its case

9

from those involving greater dangers, such as if a person were carrying a
bomb.  *Id.* at 274.  But when Lord saw Ricks and Wofford, they were
merely walking down the street with a dog.  [ECF No. 27-5, PageID.191-
92].  Except for the anonymous tip, Lord had no reason to suspect that
Ricks and Wofford posed any danger.  And Sixth Circuit guidance indicates
that the anonymous report of shots being fired, without more, is not enough
to establish reasonable suspicion.

In *Robinson v. Howes*, the deputy was informed that a 911 caller said
that shots were being fired from a yellow vehicle at a specific house in
Highland Park, Michigan.  663 F.3d 819, 821 (6th Cir. 2011).  When he
arrived at the specified house, the deputy approached the yellow car with
his gun drawn, prompting the defendant to jump out of the car and begin
shouting.  *Id.*  The deputy saw a handgun on the front seat of the car and
the defendant fled; pepper spray was used to subdue him.  *Id.* at 821-22.

The *Robinson* court noted the holding of *J.L.* that an anonymous tip,
without more, has insufficient indicia of reliability to support reasonable
suspicion.  *Id.* at 828-29.  But reasonable suspicion existed in *Robinson*
because (1) the tipster was an eyewitnesses who provided his address to
the dispatcher; (2) "the 911 call here was a contemporaneous eyewitness
account"; (3) "the call in this case did not simply report a man potentially

carrying a gun but described shots being fired"; and (4) "the Petitioner acted evasively upon seeing police approach, jumping out of the car while yelling, 'I've done nothing wrong!' and walking away from Deputy Kasholo after being ordered to stay put." *Id.* at 829-30.  In this case, the only fact relied on in *Robinson* that is also found here is that the tipster described shots being fired.  There is no information that the tipster provided an address or that the call was contemporaneous to the eyewitness account, and Lord did not testify that Ricks or Wofford did anything to arouse suspicion.

That is not all; unlike the suspects in both *Robinson* and *J.L.*, Wofford's companion (Ricks) did not plainly match the description of the person identified by the anonymous caller.  Lord testified that the anonymous tipster said that the shooter was wearing a "red hoody," but then admitted on cross examination that that was not in the police report. [ECF No. 1, PageID.15-16, 18-19; ECF No. 27-1, PageID.155].  The report referred to a "red shirt and blue pants."  [ECF No. 27-1, PageID.155].  Lord also admitted that the Ricks was wearing a black jacket that covered up the red hoody.  [ECF No. 1, PageID.18-19].  The police report said nothing about the shooter wearing a black jacket.  [ECF No. 27-1, PageID.155].

So, unlike the targets in *Robinson* and *J.L.*, Ricks did not plainly match the description of the person identified by the tipster.

What is left, then, is that Wofford and Ricks were seen in the area where shots were reported fired within seconds after Lord was dispatched. In a similar case in which "shots fired" was reported, a district judge applying *Terry* and its progeny found that reasonable suspicion was lacking. "The only connection between Dontae Smith, as the driver of the blue car, and the suspected criminal activity was that Smith was physically present, along with several other people, on Hembree Street, after Whitehead reported Hembree Street as the general direction from which a gunshot was heard." *United States v. Smith*, No. 3:07-CR-158, 2008 WL 4065936, at *6 (E.D. Tenn. Aug. 27, 2008).

For these reasons, the Court finds that defendants have not met their initial burden of showing the absence of a genuine dispute about whether Lord violated Wofford's constitutional rights by patting him down without reasonable suspicion, or about whether qualified immunity applies. Clearly established Supreme Court precedent suggests that Lord did not have reasonable suspicion to believe that either Ricks or Wofford was armed and dangerous. Summary judgment of the claims against Lord should therefore be denied. *Carver,* 946 F.2d at 454-55.

**D.**

Wofford's complaint alleges that the city is liable because it authorized or permitted a policy of improper conduct and supervision, and insufficient training, which allowed unfit officers to discharge their duties. [ECF No. 1, PageID.2].  He alleges that this policy allowed Lord to violate his rights with impunity.  [*Id.*].  Municipal liability arises only when "the challenged conduct occurs pursuant to a municipality's 'official policy' such that the municipality's promulgation or adoption of the policy can be said to have 'caused' one of its employees to violate the Plaintiff's constitutional rights."  *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)).

Defendants confusingly request that the Court grant "summary judgment" of Wofford's claim against the city of Detroit because Wofford has "failed to state a claim" for municipal liability under *Monell v. Department of Social Services*, 436 U.S. 685 (1978) and its progeny. [ECF No. 27, PageID.150-51].  The argument that a plaintiff failed to state a claim applies to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  And defendants' reference in their motion to the language of Wofford's complaint also implies that they are relying on the pleading standards of

13

Federal Rule of Civil Procedure 8 and Rule 12(b)(6).  [ECF No. 27, PageID.150].

A motion for summary judgment addresses the sufficiency of the *evidence* to support a claim, not the sufficiency of the pleadings.  A court must assess if there is "evidence on which the jury could reasonably find for the plaintiff."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Here, defendants are correct that there is no evidence in the record to support a *Monell* claim against the city.

The record shows evidence of only a single incident, and a plaintiff proceeding on a single-act theory claim "must demonstrate that a deliberate choice to follow a course of action is made from among various alternatives by the official responsible for establishing final policy with respect to the subject matter in question."  *Burgess v. Fischer*, 735 F.3d 462, 479 (6th Cir. 2013) (citation, internal quotation marks and ellipses omitted).  Here, there is no evidence that Lord's actions were caused by an unconstitutional policy or custom, nor that an official deliberately chose such an unconstitutional policy.  Thus, no reasonable jury could find the city liable and summary judgment of Wofford's municipal liability claim against the city should be granted.

**E.**

Defendants' motion addressed Wofford's claims of unlawful search and seizure under *Terry*, but not his claims of false arrest for the firearm and marijuana possession, malicious prosecution, or violation of his due process and equal protection rights.  [ECF No. 1, PageID.4-5].  This report and recommendation likewise does not address those latter claims.

**IV.   Conclusion**

The Court **RECOMMENDS** that defendants' motion for summary judgment [ECF No. 27] be **GRANTED IN PART** as it relates to the city **AND DENIED IN PART** as it relates to Lord.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: April 8, 2019

**<u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.*

*Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

16

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 8, 2019.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager